IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

TOMMIE KEMP, JR.,            )
                             )
    Plaintiff,               )
                             )
v.                           )
                             )
MICHAEL J. ASTRUE,           )  CASE NO. CV506-98
Commissioner of Social       )
Security,                    )
                             )
    Defendant.               )
                             )

## O R D E R

Before the Court are Plaintiff Tommie Kemp's Complaint and the Magistrate Judge's Report and Recommendation ("R&R"). The Commissioner of Social Security, Michael J. Astrue ("the Commissioner"), has filed objections to the R&R, to which Plaintiff has responded. After a careful review of the record, the Court does not concur with the Magistrate Judge's R&R. For the following reasons, the decision of the ALJ is **AFFIRMED**.

### BACKGROUND

Plaintiff was born on June 13, 1943. He alleges that he has been disabled since January 1, 2002 due to back injuries, Post-Traumatic Stress Disorder ("PTSD"), hypertension, and diabetes. Prior to his alleged disability, Plaintiff had been a member of the armed forces, where he served in the Vietnam War and received an expert rating on numerous specialty weapons.

Plaintiff testified that, after discharge from the military, he had been employed at various car dealerships doing electrical repair. He last worked on October 31, 2000, when the International Paper plant at which he was employed as a "dry feeder" closed down.

Plaintiff has a seventh grade education.[1] Plaintiff testified that he is illiterate, and the record shows that some forms were completed by Plaintiff's wife and then signed by Plaintiff. Plaintiff's response to a questionnaire which asked how well he could follow written instructions was "none." (R. at 117.) In addition, Dr. David Acker, a consultative psychologist who evaluated Plaintiff on behalf of the Social Security Administration on April 20, 2004, confirmed that Plaintiff's reading level was below the .02 percentile. (R. at 204A.)

Although Plaintiff testified that he was illiterate, the record shows that he managed to complete some forms himself. (R. at 111, 119.) In addition, he answered "yes" to questions on a disability form asking him whether he could read and whether he could write more than his name. (R. at 76.) He also answered in the affirmative to a question asking whether his

---

[1] Although the Veteran's Administration ("VA") records originally listed Plaintiff as a high school graduate, he testified that he had only completed the sixth or seventh grade. (R. at 687-88.) Prior to the ALJ's decision, the VA corrected Plaintiff's records to reflect his seventh grade education. (R. at 7.)

2

prior job required him to "[d]o any writing, complete reports, or perform any duties like this." (R. at 77.)

On October 28, 2003, Plaintiff filed an application for Disability Insurance Benefits. His application was denied both initially and upon reconsideration.

On October 5, 2005, Administrative Law Judge G. William Davenport ("the ALJ") held a hearing at which Plaintiff testified. A vocational expert was present but did not testify. After the hearing, the ALJ found that Plaintiff was not suffering from a "disability" as defined by the Social Security Act, 42 U.S.C. § 301 et seq. ("the Act"). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review.

On November 20, 2006, Plaintiff filed a Complaint in this Court seeking judicial review of the unfavorable decision. The Magistrate Judge issued an R&R recommending that the Commissioner's decision be reversed and that the case be remanded to the ALJ for further proceedings. The Commissioner filed an objection to the R&R, and Plaintiff filed a response.

**ANALYSIS**

I. <u>Standard of Review</u>

Judicial review of social security cases is limited to the question of whether the agency's factual findings are supported

by "substantial evidence" and whether the Commissioner has applied the correct legal standards in reaching his decision. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982)(quoting NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292, 300, 59 S. Ct. 501, 83 L. Ed. 660 (1939)).

If a decision is supported by substantial evidence, a reviewing court must affirm the decision "even if the proof preponderates against it." Dyer, 395 F.3d at 1210 (quoting Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). It must not reweigh the evidence or render its own decision on the facts. Id.

## II. **ALJ's Findings**

Pursuant to the Act, the Commissioner has established a five-step process to be used in determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). The first step determines whether the claimant has engaged in "substantial gainful activity" during the relevant period. Id. If the claimant has not engaged in such activity, then the second determination is whether the claimant has a medically

4

severe impairment or combination of impairments. Id. at 140-141.

If the impairment is severe, the third inquiry is whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to prevent substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips, 357 F.3d at 1238. If the impairment does not meet or equal a listed impairment, the fourth and fifth steps determine whether the impairment prevents the claimant from performing past relevant work or making adjustments to other work in the national economy, respectively. Phillips, 357 F.3d at 1238-39. These inquiries require the establishment of the claimant's residual functional capacity.

In following the five-step approach in this case, the ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since January, 2002. At step two, the ALJ found that Plaintiff suffered from the following "severe" impairments under the Act: cervical spondylosis with mild sensory neuropathy (which was considered "resolved" as of May 2005), non-insulin-dependent diabetes mellitus, hypertension, heart arrythmias, and lumbar degenerative joint disease. The ALJ found that Plaintiff's PTSD and carpal tunnel syndrome were

non-severe disorders. At step three, the ALJ found that Plaintiff's impairments did not medically equal a listed impairment.

The ALJ found that Plaintiff has the residual functional capacity to "perform medium exertional work with the following limitations. He can occasionally stoop, and never climb ladders, ropes or scaffolds. He has mild pain with a pain rating of 3 . . . [on a scale of 1-10, with 1 being the lowest level of pain and 10 the highest]." (R. at 24.) The ALJ stated that "the basis for this residual functional capacity is the [state agency] opinion . . . which the undersigned has adopted." (R. at 24.)

In step four, the ALJ found that Plaintiff was capable of performing past relevant work as dry feeder. The ALJ noted that because Plaintiff stated that his prior job involved four hours of stooping, he would not be able to do the job as he had previously performed it. However, the ALJ found that Plaintiff remained able to work as a dry feeder as that job is performed in the national economy. Because he found that Plaintiff's residual functional capacity would permit him to perform past relevant work, the ALJ found Plaintiff not disabled under the Act.

## III. Plaintiff's Enumeration of Errors

Plaintiff argues that the ALJ erred in the following ways: (1) failing to give the VA's percentage ratings of disability great weight; (2) finding Plaintiff's PTSD a non-severe impairment despite the VA's disability rating for this disorder; (3) wrongly relying solely upon the reports of non-examining State Agency physicians as the basis for his findings; (4) finding that Plaintiff was literate and failing to follow Social Security policy in making this determination; and (5) relying upon the finding that Plaintiff was literate in discrediting his subjective complaints of disabling symptoms.

### A. The VA's Percentage Ratings of Disability and Plaintiff's PTSD.

In the R&R, the Magistrate Judge found that the ALJ erred by failing give great weight to the VA's percentage ratings. In so finding, the Magistrate Judge noted that, although the ALJ had discussed the VA records and percentage ratings, he had not explicitly explained what level of weight had been assigned.

In reviewing the record, the Court notes that the ALJ referred repeatedly to the VA records and relied upon them in making numerous determinations.[2] Furthermore, although the ALJ

---

[2] For example, the ALJ relied upon the VA disability ratings in finding that Plaintiff could follow "complex instructions," in finding Plaintiff's carpal tunnel syndrome to be non-severe, in finding that Plaintiff's cervical radiculopathy had "resolved," and in analyzing Plaintiff's diabetes.

7

never explicitly stated what weight he had given to the VA percentage ratings, his discussion of them was sufficient to indicate that he had given them significant weight. For example, the ALJ found that Plaintiff's PTSD was non-severe despite a VA rating of 30% disabled. In doing so, the ALJ thoroughly explained his departure from the disability rating and his reliance upon other VA records. Accordingly, the Court does not concur with the report of the Magistrate Judge.

B. **Reliance Upon Reports of Non-examining State Agency Physicians**

Plaintiff argues that the ALJ impermissibly relied solely upon the opinion of Dr. Phillip E. Gertler, a non-examining physician with Georgia Disability Adjudication, in determining Plaintiff's residual functional capacity. Dr. Gertler found that Plaintiff could occasionally lift fifty pounds and frequently lift thirty. Plaintiff argues that the following statement of the ALJ is evidence of the impermissible reliance upon Dr. Gertler's opinion: "The basis for this residual functional capacity is the [state agency] opinion, which the undersigned has adopted." (R. at 24.)

In response, the Commissioner argues that the ALJ's reliance upon the findings of Dr. Gertler was appropriate and that the findings do not conflict with the opinion of any treating or examining physician. Furthermore, the Commissioner

8

contends that Plaintiff has failed to provide any evidence that he is incapable of performing medium level work. The Court agrees.

The Eleventh Circuit has held that the opinions of non-examining physicians are "entitled to little weight and taken alone [do] not constitute substantial evidence to support an administrative decision." Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990). However, it may be appropriate for an ALJ to rely on the opinion of a non-examining physician where the physician's opinion is consistent with the opinions of examining physicians. Edwards v. Sullivan, 937 F.2d 580, 584-85 (11th Cir. 1991).

In this case, Dr. Gertler's opinion is consistent with the findings of at least one examining physician, Dr. Stanley Wallace, of the Southeastern Internal Medical Association. Dr. Wallace found that Plaintiff had a normal gait and exhibited no motor loss. (R. at 197.) He found that Plaintiff had normal deep tendon flexion and a normal ability to raise each leg. He also found that Plaintiff retained manual function and was able to form a full fist without difficulty. (R. at 198.) These findings are consistent with Dr. Gertler's opinion regarding Plaintiff's residual functional capacity, and together the reports of these physicians support the ALJ's determination. See Edwards, 937 F.2d at 585.

In addition, no other physician issued an opinion regarding Plaintiff's residual capacity. Therefore, it is unsurprising that the ALJ should have based his determination upon Dr. Gertler's opinion, which found support in the medical evidence. And Plaintiff has not provided any medical evidence indicating that he is incapable of medium level work. Accordingly, the ALJ's determination of Plaintiff's residual functional capacity is supported by substantial evidence.

C. **Literacy and Credibility**

   1. **The ALJ's determination that Plaintiff was literate was supported by substantial evidence.**

Plaintiff argues that the ALJ erred in finding Plaintiff literate despite substantial evidence to the contrary. In support of this argument, Plaintiff points to the following evidence, which suggests that Plaintiff is illiterate: (1) Plaintiff's testimony that he could not read and could "just" sign his name; (2) Plaintiff's testimony that he obtained his weapons rating through his natural mechanical abilities (R. at 690-91); (3) the fact that Plaintiff's wife assisted him in filling out certain forms (R. at 91, 133-35); and (4) the fact that Dr. Acker confirmed that Plaintiff's reading level was below the .02 percentile. Plaintiff also argues that the ALJ erred by relying upon the fact that Plaintiff had finished high

school, despite the record unequivocally showing that he did not.

In response, the Commissioner argues that the ALJ's finding regarding Plaintiff's literacy was "well supported." (Def.'s Br. at 14.) The Commissioner refers to the fact that Plaintiff was given written instructions by medical staff at two VA hospitals and states that Plaintiff's ability to sign his name renders him literate. The Commissioner also argues that Plaintiff's military record belies his claim of illiteracy in that "it is difficult to see how Plaintiff attained [his] ranking without reading the manuals." (Id.)

After a careful review of the record, the Court finds that the ALJ's decision on this point was based upon substantial evidence. The ALJ relied upon the following: (1) the fact that Plaintiff was able to fill out some forms without help in the course of applying for disability benefits; (2) the fact that Plaintiff answered "yes" in response to questions regarding his ability to read and write English; (3) the fact that Plaintiff answered "yes" when asked if he had been required to write reports in his previous job; and (3) Plaintiff's military rank and expert weapons ratings, which the ALJ felt would be impossible for an illiterate individual to achieve.

Although there is evidence to support a determination of either literacy or illiteracy, that determination is for the

ALJ, rather than this Court, to make. The Court finds that the ALJ weighed the evidence and that his determination that Plaintiff was literate was supported by substantial evidence.[3]

### 2. The ALJ articulated an adequate and explicit reason for finding Plaintiff less than credible.

Plaintiff also argues that the ALJ erred in disregarding Plaintiff's testimony regarding his disabling symptoms. According to Plaintiff, the ALJ's credibility determination was erroneous because it was based upon inconsistencies in Plaintiff's responses concerning his literacy.

Credibility determinations about subjective testimony are generally reserved to the ALJ. See Johns v. Bowen, 821 F.2d 551, 557 (11th Cir. 1987). However, before making a credibility assessment, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." Social Security Ruling 96-7p. If the ALJ "decides not to credit such [subjective] testimony, he must articulate explicit and adequate reasons for doing so." Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991).

The ALJ explained his reason for discrediting Plaintiff's subjective complaints as follows:

---

[3] The fact that the ALJ relied upon an erroneous belief that Plaintiff was a high school graduate is not controlling here, because even without consideration of Plaintiff's educational level, the ALJ's determination was supported by substantial evidence.

> Clearly, claimant IS literate. His insistence upon appearing illiterate merely acts to destroy his credibility. After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that claimant's statements concerning the intensity, duration and limiting effects of these symptoms are <u>not</u> credible. Claimant has zero credibility.

(R. at 25.) Because the ALJ's finding that Plaintiff is literate was based upon substantial evidence, it was not error for the ALJ to discredit Plaintiff's subjective complaints on the basis that Plaintiff's claim of illiteracy rendered him less than credible. The ALJ has therefore articulated "explicit and adequate" reasons for discrediting Plaintiff's subjective complaints of disabling symptoms, as required. Accordingly, the fact that the ALJ found Plaintiff's subjective complaints less than credible is not grounds for reversal.

## CONCLUSION

For the foregoing reasons, the decision of the ALJ is **AFFIRMED**. The Clerk of Court is **DIRECTED** to **CLOSE** this case.

SO ORDERED this 24th day of March, 2008.

_____
WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

13